IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

REMO H. DANIELS,

                Plaintiff,              OPINION AND ORDER

v.

                                          21-cv-591-wmc

SGT. YELENA NELSON and
SGT. NICOLE BORLAND-WINKLER,

                Defendants.

---

*Pro se* plaintiff Remo H. Daniels, who currently is incarcerated at Columbia Correctional Institution ("Columbia"), is proceeding in this lawsuit under 42 U.S.C. § 1983, against defendants Yelena Nelson and Nicole Borland-Winkler, who allegedly failed to protect him from committing severe self-harm through cutting and an overdose of medications in June of 2021. Previously the court directed defendants to respond to Daniels' motion for a preliminary injunction, in which he claims that although institution procedures require him to be placed on a "crush and float" medication restriction to avoid future self-harm, that restriction has not been imposed and it is likely he will overdose again. (Dkt. #5.) Having received defendants' response and evidence related to Daniels' prior self-harm, the court is denying Daniels' motions, since the relief he seeks is unrelated to his self-harming behaviors and the court is not in a position to dictate how his medication should be administered.

OPINION

A preliminary injunction is an "extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. CentiMark Corp.*, 796 F.3d 656, 661 (7th

Cir. 2015) (internal citation omitted).  The Court of Appeals for the Seventh Circuit instructs that a district court should engage in a two-step analysis in evaluating a request for preliminary relief.  "In the first phase, the party seeking a preliminary injunction must make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Id.* at 661-62.  If the moving party meets this first burden, then the court must weigh the factors against one another in a sliding scale analysis to determine whether the balance of harms weighs in favor of the moving party or whether the nonmoving party (or public interest) will be harmed sufficiently, such that the injunction should be denied.  *Id*.  The Prison Litigation Reform Act ("PLRA") further limits the court's authority to enter injunctions in the prison context by prescribing that "remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right."  *Westefer v. Neal*, 682 F.3d 679 (7th Cir. 2012) (quoting 18 U.S.C. § 3626(a)(1)(A)).

      Daniels has not begun to show a need for, much less an entitlement to, a crush and float order, and defendants have established that such an order here would exceed this court's authority under the PLRA.  Starting with Daniels' need for a crush and float order, defendants offer evidence of Daniels' June 2021 self-harm that formed the basis of his claims in this lawsuit.  They submit the declaration of Advanced Practice Nurse Prescriber ("APNP") Jeanie Kramer, Daniels' provider.  Kramer attests that in April of 2021, before the incidents in this lawsuit, Daniels notified Health Services Unit ("HSU") staff that he

was feeling unsafe keeping his medications in his cell. (Kramer Decl. (dkt. #10) ¶ 15.) To prevent Daniels from misusing his medications, HSU staff modified Daniels' medications to have staff control distribution. Kramer further explains that on June 26, 2021, Daniels was taken to Divine Savior Hospital Emergency Room for a right leg laceration and self-reported overdose. Daniels told a doctor in the emergency room that he had overdosed on 15 meloxicam pills and an unknown quantity of pills he obtained from other inmates, but the toxicology report and x-ray were normal, with no evidence of an overdose. (*Id.* ¶ 18 (citing Ex. 1003 (dkt. #10-1) 9), ¶¶ 20-22).)

To support their objection to a crush and float order for Daniels, defendants point to Kramer's declaration and the declaration of Dr. Kevin Kallas, the Wisconsin Department of Corrections' ("DOC") Mental Health Director. Dr. Kallas attests that crush and float orders are *not* the standard policy for the safe administration of medication after misuse or overuse, as set forth in DAI Policy #500.80.26. Rather, according to both Dr. Kallas and Kramer, the standard method for protecting inmates at risk of overdose is to have staff control their medication distribution. (Kallas Decl. (dkt. #9) ¶ 20; Kramer Decl. (dkt. #10) ¶ 11.) Dr. Kallas and Kramer further agree that, based on Daniels' history of obtaining medication from other inmates, a crush and float order would *not* prevent Daniels from attempting another overdose. Kramer adds that psychological services unit ("PSU") staff have specifically recommended that if Daniels showed a need for a crush and float order, then that medication should be *discontinued*, as opposed to administered differently. (Kramer Decl. (dkt. #10) ¶ 29.)

In addition to pointing to reasons why the crush and float order would not be appropriate for Daniels' in particular, defendants oppose plaintiff's request because the relief will adversely impact the safety and security at Columbia. Dr. Kallas attests that Columbia staff believe that inmates have been requesting this order for purposes other than health and safety. Specifically, shortly after Daniels' claimed overdose, Columbia's HSU Manager Melissa Block observed that a large number of inmates were requesting this order, which requires inmates to walk to and from the HSU, as opposed to receiving their medication in their housing unit. Block further observed that inmates would take a very long time to walk to and from the HSU, and during those trips inmates would socialize and, she believed, possibly hand off medications or contraband, posing security risks. (Kallas Decl. (dkt. #9) ¶ 12.) Kallas further attests that crush and float orders are time intensive, and thus should be ordered rarely, especially given that all psychotropic medications -- including Daniels' -- are staff controlled to ensure that those medications are safely administered. (*Id.* ¶ 16.)

Daniels does not dispute defendants' evidence. Given this more robust review of Daniels' history of self-harm, the June 2021 incident, and the contemporaneous trend among inmates requesting this order, Daniels' desired injunction would be completely inappropriate. Even setting aside defendants' legitimate concern about safety and security risks such an injunction may have at Columbia, and the court's hesitancy to permit Daniels to dictate the administration of his medication, Daniels has not shown that his tendency to self-harm has *any* relationship to receiving his medications in pill form. Daniels' June 2021 self-harm incident did not show an actual overdose, and Daniels has not submitted

4

evidence of any other incident in which he overdosed from the medications administered by staff.  More importantly, Daniels has not submitted evidence or argument refuting Dr. Kallas and Kramer's respective opinions that, based on his history of obtaining medications from other inmates, a crush and float order would not deter his type of self-harm regardless.  Indeed, this is the position that Columbia PSU staff have taken for inmates like Daniels who might divert medications for inappropriate uses.  Accordingly, Daniels has failed to show that he is entitled to the extraordinary relief he seeks, and his motion will be denied.

Finally, Daniels has filed a motion requesting that the court order defendants to preserve certain evidence.  (Dkt. #12.)  Daniels represents that he has been requesting certain evidence from his institution, including incident reports, conduct reports and camera footage, and the institution has told them they do not have the evidence.  Daniels appears to suggest that certain evidence has been, or may be, destroyed, but he has not provided sufficient details for the court to infer that intervention is necessary.  Moreover, discovery in this case has not yet commenced, so it is not even apparent that defendants are unable to produce the documents Daniels seeks.  Therefore, the court is not able to issue any sort of protective order, so the court will deny this motion.  That said, to the extent Daniels is seeking assurance that defendants may not dispose of any evidence relevant to his claims in this lawsuit, defendants may not:  their duty to preserve evidence has been triggered by this lawsuit and certainly this motion.

ORDER

IT IS ORDERED that:

1) Plaintiff Remo Daniels' motion for a preliminary injunction (dkt. #4) is DENIED.

2) Plaintiff's motion for protection of evidence (dkt. #12) is DENIED.

Entered this 22nd day of March, 2022.

        BY THE COURT:

        /s/

        _____
        WILLIAM M. CONLEY
        District Judge